CITY OF CUYAHOGA FALLS ET AL., APPELLEES AND CROSS-APPELLANTS, *v.* ROBART, MAYOR, ET AL., APPELLANTS AND CROSS-APPELLEES.

[Cite as Cuyahoga Falls *v.* Robart (1991), 58 Ohio St. 3d 1.]

(No. 89-1769—Submitted November 14, 1990—Decided February 27, 1991.)

1

*George Pappas Co., L.P.A.,* and *Dennis J. Bartek,* for appellees and cross-appellants.

*Virgil Arrington, Jr.,* deputy law director, for appellants and cross-appellees Robart, Gault, Klein and Pritt.

*Amer Cunningham Brennan Co., L.P.A., Jack Morrison, Jr.* and *Michael S. Urban,* for appellants and cross-appellees Joseph and Ross.

MOYER, C.J. Upon review, we hold that the trial court properly entered judgment against plaintiffs on the taxpayer and declaratory judgment actions. The court of appeals therefore erred in reversing the trial court's judgment in part.

The first question we address is whether the taxpayer action was timely filed. The taxpayer action was presumably brought pursuant to R.C. 733.59. Plaintiffs have not referred this court to any other statutory basis for the taxpayer action. R.C. 733.59 authorizes a taxpayer to institute suit in his own name on behalf of the city to enjoin the misapplication of city funds, the abuse of corporate powers, or the execution or performance of illegal contracts. See R.C. 733.56.

It is well-settled that "any action predicated upon R.C. 733.56 and 733.59 must be instituted within the limitation period prescribed by R.C. 733.60 * * *." *Westbrook* v. *Prudential Ins. Co. of America* (1988), 37 Ohio St. 3d 166, 169, 524 N.E. 2d 485, 488. R.C. 733.60 provides: "No action to enjoin the performance of a contract entered into or the payment of any bonds issued by a municipal corporation shall be brought or maintained unless commenced within one year from the date of such contract or bonds." Although this statute does not expressly refer to cases involving misapplication of funds, when the purported misapplication of funds is the result of an illegal contract, the one-year limitations period of R.C. 733.60 applies. *Dehmer* v. *Campbell* (1933), 127 Ohio St. 285, 188 N.E. 6, syllabus.

An employment relationship is contractual in nature. Consequently, the attempt in this action to enjoin the

employment "contract[s] entered into" with Joseph and Ross is subject to the one-year limitations period in R.C. 733.60. This taxpayer action was brought more than one year after Joseph and Ross were appointed to and began their positions and thus more than one year after "the date of such contract[s]." The court of appeals correctly affirmed the judgment entered against plaintiffs on their taxpayer action.

If plaintiffs are to succeed at all, they must do so in the context of their declaratory judgment action. We first determine whether the city of Cuyahoga Falls was a proper party plaintiff to the complaint. The city was made a party plaintiff to the complaint by an outside counsel who was hired by the city council president pursuant to the purported authority of Ordinance Nos. 232-1986 and 71-1988. Defendants argue that the foregoing ordinances did not authorize the hiring of outside counsel to represent the city. Plaintiffs argue, however, that Ordinance No. 71-1988, which was approved by the mayor, clearly authorized suit in the city's name because it referred to the caption of this case, which names the city as a plaintiff. For the following reasons, even if we adopted the plaintiffs' reading of the ordinances, we would nevertheless find the ordinances invalid because they conflict in this case with charter provisions that repose in the law director the duty to represent the city in all lawsuits.

Article III of the Cuyahoga Falls City Charter establishes a department of law, and the position of law director as head of the department. Section 2 of Article III of the charter provides that the mayor shall appoint the law director subject to the approval of a majority of the city council. The same section provides that the mayor may remove the law director. Section 3 of Article III states that the law director "shall be the legal advisor of and attorney and counsel for the city and for all offices and departments of the city, in matters relating to their official duties. *He shall prosecute or defend all suits for or in behalf of the City * * *. * * * In addition to the duties imposed upon the Director of Law by the Charter or required of him by ordinance, he shall perform the duties imposed upon City Solicitors by the laws of the State of Ohio, unless and until otherwise provided by ordinance.*" (Emphasis added.) The foregoing provisions thus indicate that the mayor shall appoint the city's law director and that the law director, not a special counsel, shall represent the city in all its lawsuits.

The plaintiffs urge a number of reasons for allowing the city council president to appoint an outside counsel to represent the city pursuant to Ordinance Nos. 232-1986 and 71-1988. Plaintiffs argue that the city charter allows the law director's duties to be modified by ordinance. We agree that some of the law director's duties may be modified by ordinance; however, the basic duties imposed on the law director by the charter cannot be modified by ordinance. The charter states: "In addition to the duties imposed upon the Director of Law by the Charter or required of him by ordinance, he shall perform the duties imposed upon City Solicitors by the laws of the State of Ohio, unless and until otherwise provided by ordinance." We read this language as allowing the city to modify by ordinance only those additional duties imposed on the law director by state law. To the extent that Ordinance Nos. 232-1986 and 71-1988 purport to diminish or change the law director's duty under the charter to represent the city in all litigation, they are in conflict with the express provision of the charter and are therefore invalid.

One of the additional duties imposed on the law director by state law, the court of appeals stated, is the duty to file suit on behalf of the city when required to do so by city council. R.C. 733.53 states that a law director, "when required to do so by resolution of the legislative authority of the city, shall prosecute or defend on behalf of the city, all complaints, suits, and controversies in which the city is a party, and such other suits, matters, and controversies as he is, by resolution or ordinance, directed to prosecute." The court of appeals appears to have reasoned that, since the city council could have required the law director to sue the defendants on behalf of the city, it also had the authority to provide for the employment of outside counsel to represent the city given the law director's conflict of interest as counsel for the defendants.

We do not question here the city council's authority as a general matter to require by ordinance that the law director prosecute certain litigation on behalf of the city. However, we hold that any exercise of that authority in this case was improper. In this dispute between the executive and legislative branches of city government, city council cannot have any greater claim to representing the "city's" interests than the defendants or the law director. The charter reposes the duty to represent the city in the city's law director, an officer of the executive branch. Therefore, the power to determine the city's position under these facts should be found in the executive branch. City council should not be able to use its authority to direct the law director's actions solely as a legal maneuver in litigation against officers of the executive branch. As a result, Ordinance Nos. 232-1986 and 71-1988 cannot be justified as an exercise of city council's authority under the charter and R.C. 733.53 to require the law director, or outside counsel, to prosecute litigation on behalf of the city.

Finally, plaintiffs assert that Ordinance Nos. 232-1986 and 71-1988 are valid because the city may employ outside counsel to represent the city "when the interests of the municipality require it." We find that this argument has no merit in this case.

When a city charter imposes a duty on the law director to represent the city in all its litigation, the charter prohibits, by implication, the city from appointing an outside counsel, in place of the regular law director, to represent the city in its litigation.[2] See *State, ex rel. Cleveland City Council,* v. *Cuyahoga Cty. Bd. of Elections* (1974), 40 Ohio App. 2d 299, 302-303, 69 O.O. 2d 273, 275-276, 318 N.E. 2d 889, 891-892. Therefore, in light of its charter, the city, as a general matter, could not employ outside counsel as a substitute for its law director.

Nevertheless, we do not read the charter as wholly prohibiting the city from providing for the appointment of outside counsel. In some circumstances, when the law director is ill, absent, or otherwise disqualified from acting, outside counsel may be necessary. As stated in *Meeske* v. *Baumann* (1932), 122 Neb. 786, 791, 241 N.W. 550, 552:

"The power of the city to employ counsel, implied as it necessarily is from the legislative grant to sue and defend, is not wholly taken away by statutory provisions creating the office

[2] The charter provision in question does not affect the city's ability to provide for the employment of outside counsel to act as co-counsel with the city's law director in representing the city.

of city attorney, prescribing the duties of that officer and restricting payment of city funds to regular city officers and employees. Otherwise, absence, illness, refusal to act, hostility to public interest, or other temporary incapacity of the regular city attorney might leave the municipality without necessary counsel even in a grave emergency. * * *"

In short, when a city charter provides for representation of the city by its law director in all lawsuits, the city has no authority to provide for the hiring of outside counsel, in place of the law director, to act on behalf of the city in particular litigation, unless the law director is ill, absent, or otherwise disqualified from acting.

In our view, the law director is not disqualified from acting for the city in this litigation. Plaintiffs suggest that the law director cannot represent the city because he has a "bias" in favor of the mayor and his actions, which arises from the fact that the mayor hired the law director and could fire him. This alleged "bias" or conflict of interest, however, is insufficient to disqualify the law director from representing the city. The charter itself places the position of law director in the executive branch and provides that the law director may be removed by the mayor. Although the authors of the charter were aware that such a conflict of interest might exist, they did not expressly qualify the law director's charter-imposed duty to represent the city in "all" suits. The existence of this purported conflict of interest should not, by itself, disqualify the law director from representing the city.

Of course, we cannot anticipate every circumstance in which city council or the mayor will find it necessary to approve an ordinance to hire outside counsel to represent the city. However, in this case, we conclude

that the law director is not disqualified from representing the city merely because he agrees with the mayor's position. In the absence of any other factor disqualifying or disabling the law director from acting, the city had no authority under the charter to provide for the appointment of outside counsel to represent the city. We note that the mayor's approval of Ordinance No. 71-1988 is irrelevant to the disposition of this issue. Regardless of the mayor's approval of that ordinance, the city under these circumstances cannot hire outside counsel to perform duties reposed in the law director by the charter. Accordingly, we find that this declaratory judgment action was not properly instituted on behalf of the city and that the city therefore was not a proper party plaintiff to the complaint.

We further note that the plaintiffs have conceded that the "city council" was not a proper party plaintiff in its own right. A city council is not *sui juris* and therefore cannot sue or be sued in its own right, absent statutory authority. *State, ex. rel. Cleveland Municipal Court*, v. *Cleveland City Council* (1973), 34 Ohio St. 2d 120, 122, 63 O.O. 2d 199, 200, 296 N.E. 2d 544, 547; *Council of Whitehall* v. *Rogers* (1980), 69 Ohio App. 2d 124, 23 O.O. 3d 329, 432 N.E. 2d 216.

Finally, we conclude that the individual city council members have not raised viable claims for declaratory relief in their legislative capacity. To an extent, the council members lack standing in this case. Legislators have standing to vindicate their prerogative to vote in all matters that require legislative consideration. See *Riegle* v. *Fed. Open Market Commt.* (C.A.D.C. 1981), 656 F. 2d 873, certiorari denied (1981), 454 U.S. 1082; *Kennedy* v. *Sampson* (C.A.D.C. 1974), 511 F. 2d 430. However, in this case, the council

members are claiming that the positions of data processing manager and utility billing manager should be treated as classified rather than unclassified. The council members have not shown how the placement of those positions in the classified service would vindicate their right to vote. Because this claim of improper classification does not affect their right to vote or any other claimed legislative prerogative, the council members, as legislators, have no standing to raise it.

In anticipation that they do not meet usual standing requirements, plaintiff council members contend that the rules of standing should be relaxed in matters of public importance. We decline to apply any such exception in this case. Plaintiff council members could have taken advantage of the less demanding standing requirements of R.C. 733.59 had they timely filed their taxpayer action.

In addition to claiming that the positions should be in the classified service, plaintiff council members have argued that they were denied their right under the charter to advise and consent to the appointments of Joseph and Ross to the purportedly unclassified positions. The council members have standing to raise this claim, since it invokes their alleged right as legislators to vote on the appointments. See *Dennis* v. *Luis* (C.A. 3, 1984), 741 F. 2d 628 (legislators have standing to challenge the denial of their advise and consent role in executive appointments).

The council members' claim of an advise and consent role nevertheless has no merit. The council members rely on Section 3, Article VI, which states that the city's finance director "shall appoint one Deputy Director of Finance to serve at his pleasure and with the approval of Council he may appoint other assistants or deputy directors as needed, and deputies or assistants so appointed shall not be subject to the Civil Service provisions of this Charter." Although this provision gives city council some form of approval power vis-a-vis appointments by the finance director, the appointments of Joseph and Ross in this case were made by the mayor and not the finance director. The approval clause of Section 3, Article VI, therefore, has no relevance to these appointments. On standing grounds or on the merits, the council members have not raised any viable claim in their legislative capacity.

In short, we conclude that the taxpayer action was untimely filed and that the declaratory judgment action does not warrant relief for any of the named plaintiffs. Accordingly, we reverse the appellate court judgment in part, affirm it in part, and reinstate the trial court judgment entered in favor of the defendants.

*Judgment reversed in part and affirmed in part.*

SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.