936 So.2d 862 (2006)
THE COUNCIL OF THE CITY OF NEW ORLEANS
v.
SEWERAGE & WATER BOARD OF NEW ORLEANS; Boh Bros. Construction Co., L.L.C.; Renaissance Integrated Solutions, LLC; and Ris New Orleans, LLC.
No. 2005-CA-0384.
Court of Appeal of Louisiana, Fourth Circuit.
July 12, 2006.
Russ M. Herman, Sidney A. Cotlar, Steven J. Lane, David K. Fox, Soren E. Gisleson, Herman, Herman, Katz & Cotlar, LLP, New Orleans, Counsel for Plaintiffs/Appellants.
Gerard M. Victor, Special Counsel, Sewerage & Water Board of New Orleans, Baton Rouge, Counsel for Defendant/Appellee (Sewerage and Water Board of New Orleans).
Sherry S. Landry, Former City Attorney, Thomas A. Robichaux, Assistant City Attorney, Janita L. Reliford, Assistant City Attorney, Joseph V. DiRosa, Chief Deputy City Attorney, New Orleans, Counsel for Intervenor (The City of New Orleans).
(Court composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F McKAY, III and Judge MICHAEL E. KIRBY).
MICHAEL E. KIRBY, Judge.
On February 1, 2005, the New Orleans City Council ("Council") filed a Petition for Injunction against the Sewerage & Water Board of New Orleans ("S & WB"), Boh Bros. Construction Co., L.L.C., Renaissance Integrated Solutions, L.L.C., and RIS New Orleans, L.L.C. for the unlawful laying of fiber optic cable while they were digging up and replacing leaking sewer pipes. The pipe replacement work was undertaken pursuant to orders of the U.S. environmental Protection Agency. The Council alleged specifically that the S & WB laid the fiber optic cable alongside the new pipe without a franchise[1] from the City Council.
*863 The S & WB filed an exception of no right of action which the trial court granted and dismissed the Council's suit. The trial court's oral reasons for the dismissal were that the New Orleans City Council did not have the capacity to bring this suit and it is not a juridical person. The Council appeals.

DISCUSSION:
At issue in this case is whether the Council has the authority to bring and enforce this action.
The New Orleans Home Rule Charter Art. III, § 128(1) states:
The Council shall have the power to grant franchises, privileges and permits, fixed or indeterminate, for the use of the streets and other public places for the furnishing of any service to the City or to its inhabitants subject to applicable state or municipal law. All franchises, privileges and permits and any renewals, extensions and amendments thereof, shall be granted only by ordinance. All such proposed ordinances shall be submitted to the Department of Utilities or its successor and it shall render to the Council a written report containing recommendations thereon.
Moreover, Home Rule Charter Art. III, § 130(1) states:
The Council of the City of New Orleans shall have all powers of supervision, regulation, and control consistent with the maximum permissible exercise of the City's home rule authority and the Constitution of the State of Louisiana and shall be subject to all constitutional restrictions over any street, railroad, electric, gas, heat, power, waterworks, and other public utility providing service within the City of New Orleans including, but not limited to the New Orleans Public Service, Inc. and the Louisiana Power and Light Company, their successors or assigns.
In light of the above-quoted provisions, there can be no doubt that the Council has legislative authority to regulate and supervise utilities, including franchises.
The Executive Branch and its Unattached Board,[2] S & WB, argue, however, that these articles do not grant the Council the power of enforcement. They contend the power of enforcement belongs to the executive branch, that is, the Mayor of the City of New Orleans and the administrative departments. Home Rule Charter, Art. IV, § 101.
The Executive Branch cites Home Rule Charter, Art. III, § 130(3), to support its position, to wit:
The City of New Orleans may institute or participate in any proceeding affecting the City Council's powers of supervision, regulation and control granted hereunder over public utilities or affecting in any way the interests of the ratepayers of the City of New Orleans, and any recovery or benefit derived from any such proceeding shall be allocated by the City Council as it deems fit and proper, pursuant to such reasonable rules and regulations as the Council may adopt.
From this provision it infers that only the City of New Orleans via the executive branch and the legal department may initiate *864 or participate in legal actions on behalf of the City Council to protect its authority. This is in accord with Home Rule Charter Art. IV, § 401, which states that the City Attorney directs the legal affairs of the City of New Orleans.
The City relies upon several cases from the federal system to make a separation of powers argument in support of its position. We agree with the Council that the analogy is inapposite because, as will appear infra, we do not find the Council infringed upon any power or prerogative of another branch of City government.
The S & WB relies upon City Council of City of Lafayette v. Bowen, 94-584, (La. App. 3 Cir. 11/2/94), 649 So.2d 611, which held that the Lafayette City Council is not a juridical person and is not an entity to which the law attributes personality in support of its argument that the New Orleans City Council is not a juridical person. However, that argument does not take into account significant differences between the Lafayette City Charter and the Charter for the City of New Orleans. Significantly, we note the Lafayette Charter at issue in Bowen, supra, created a "Mayor-council" form of government. The Mayor was designated the chief executive office and head of the executive branch. The council was designated the legislative branch. Section 2-04 of that Charter gave the council "all powers of the City" except as otherwise provided by law or in the Charter. The Third Circuit specifically noted that the Charter was "clearly silent" on the issue of whether the council could sue and be sued independently of the City of Lafayette and the Mayor.
In the instant case however, New Orleans Home Rule Charter, Art. IV, § 403, provides:
(1) No special council (sic) shall be retained to represent the City or any officer, department, or board except the Sewerage and Water Board, the Department of City Civil Service, the Public Belt Railroad Commission, and the Board of Liquidation, City Debt, and except as may herein be otherwise provided.
(2) The Council may, by two-thirds vote of its entire membership, employ special counsel for itself.
(3) The Council may, by two-thirds vote of its entire membership, authorize any officer, department or board to employ special counsel for any special matter presenting a real necessity for such employment, provided any such authorization shall specify the compensation, if any, to be paid for said services.
We acknowledge that any exercise of executive authority by the Council cannot be implied, but rather must be expressly granted. While we note the possibility of different interpretations of the applicability of Art. III § 130(3) vis-à-vis Art. IV § 403(2), La. Civil Code art. 9, guides our interpretation. It states that when a law is clear and unambiguous and its application does not lead to absurd consequences, no further interpretation may be made in search of the intent of the legislature. Therefore, since (1) the Council did vote by two-thirds of its entire membership to employ special counsel for itself, (2) Art. IV, § 403(2) grants that authority expressly, and (3) we cannot find that the Council's capacity to sue to enforce its franchise authority leads to an absurd consequence, it was improper for the trial court to grant the S & WB's exception of no cause of action based upon lack of juridical capacity.
For the aforementioned reasons, we reverse the trial court and remand.
REVERSED AND REMANDED
NOTES
[1] The definition of "franchise" in BLACK'S LAW DICTIONARY 658 (6th Ed.1990) is: A special privilege to do certain things conferred by government on individual or corporation, and which does not belong to citizens generally of common right; e.g., right granted to offer cable television service.
[2] Home Rule Charter Art. V § 301, continues the existence of the S & WB, and composes it of the Mayor, two at large members of the Council, one of the district Councilmembers selected by the Council, and two members of the Board of Liquidation, City Debt and seven citizens appointed by the Mayor with Council approval. See also H.R.Charter Art. IV § 206(e).